FILED

JUL 1 5 2021

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                          DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL VALDEZ, individually and as the successor-in-interest to IRMA VALDEZ,<br><br>                    Plaintiff,<br><br>v.<br><br>JOHNSON & JOHNSON CONSUMER, INC., a California corporation; and DOES 1 through 100, inclusive,<br><br>                    Defendant. | Case No.: 3:21-cv-00873-BEN-DEB<br><br>**ORDER:**<br><br>**(1) DENYING *WITHOUT PREJUDICE* PLAINTIFF'S MOTION TO FILE FIRST AMENDED COMPLAINT AND REMAND TO STATE COURT;**<br><br>**(2) GRANTING DEFENDANT'S MOTION TO STAY; and**<br><br>**(3) DENYING AS MOOT PLAINTIFF'S *EX PARTE* MOTION TO CONSOLIDATE**<br><br>**[ECF Nos. 6, 7, and 9]** |

## I.    INTRODUCTION

Plaintiff MANUEL VALDEZ, individually and as the successor-in-interest to IRMA VALDEZ ("Plaintiff") brings this action against Defendants JOHNSON & JOHNSON CONSUMER, INC., a California corporation incorporated under the laws of New Jersey with its principal place of business in New Jersey, ("Defendant" or "Johnson & Johnson"), and DOES 1 through 100 arising out of the death of Plaintiff's wife, which

1     Plaintiff alleges was caused by using Defendant's Baby Powder. ECF No. 1 at 2, 4.

2         Before the Court are (1) Defendant's Motion Stay All Proceedings, ECF No. 6; (2)

3     Plaintiff's Motion to (a) File a First Amended Complaint and (b) Remand Back to State

4     Court, ECF No. 7; and (3) Plaintiff's *Ex Parte* Motion for Order Consolidating Hearing

5     Dates, ECF No. 9.

6         The motions were submitted on the papers without oral argument pursuant to Civil

7     Local Rule 7.1(d)(1) and Rule 78(b) of the Federal Rules of Civil Procedure. ECF No. 12,

8     16. After considering the papers submitted, supporting documentation, and applicable law,

9     the Court (1) **GRANTS** Defendant's Motion to Stay, ECF No. 6; (2) **DENIES** Plaintiff's

10    Motion for Leave to File First Amended Complaint and Remand Case to Superior Court,

11    ECF No. 7; (3) and **DENIES AS MOOT** Plaintiff's *Ex Parte* Motion for Order

12    Consolidating Hearing Dates, ECF No. 9.

13   **II.**    **BACKGROUND**

14       **A.**    **Statement of Facts**

15         Plaintiff, a California citizen, alleges that on April 1, 2019, his wife, Irma Valdez

16    ("Decedent"), died at the age of 47 with a form of vaginal cancer caused by years of using

17    Defendant's Baby Powder as a feminine hygiene product. Complaint, ECF No. 1-2

18    ("Compl.") at 6,[1] ¶ 1, 7, ¶¶ 2-3.

19        In 2011, Decedent noticed an uncomfortable bump on her vaginal wall, which

20    doctors later determined to be leiomyosarcoma, a rare type of cancer. Compl. at 10, ¶ 26.

21    Plaintiff alleges that for decades, Defendant Johnson & Johnson knew the talc powder—

22    the primary ingredient in its Baby Powder—contained asbestos, well-known carcinogen.

23    *Id.* at 6, ¶ 1. Plaintiff pleads that Defendant's Baby Powder was a substantial factor in his

24    wife's death. *Id.* at 10, ¶ 27.

25        According to Defendant, "[t]here are presently at least 26,000 individual actions

26    pending in federal courts across the country in which the plaintiffs allege that perineal use

27

28    [1]     Unless otherwise indicated, all page number references are to the ECF generated page number contained in the header of each ECF-filed document.

3:21-cv-00873-BEN-DEB

of cosmetic talc products manufactured and marketed by Johnson & Johnson Consumer Inc. caused them to suffer ovarian cancer." Defendant's Motion to Stay, ECF No. 6-1 ("Stay Mot.") at 2:23-25. On October 4, 2016, the Judicial Panel on Multidistrict Litigation ("JPML") issued a transfer order creating a multidistrict litigation proceeding related to this case: *In re Johnson & Johnson Talcum Powder Mktg., Sales Practices and Prods. Liab. Litig.*, before Judge Wolfson in the U.S. District Court for the District of New Jersey (the "MDL") to coordinate pretrial proceedings in "actions [that] share common factual questions arising out of allegations that perineal use of Johnson & Johnson's talcum powder products can cause ovarian or uterine cancer in women." *Id.* at 3:1-5.

### B. **Procedural History**

On March 30, 2021, Plaintiff filed a complaint against Defendant in the San Diego County Superior Court of California, alleging causes of action for (1) strict products liability; (2) negligence; and (3) fraud. *See* Compl. at 6; *see also Manuel Valdez, individually and as the successor-in-interest to Irma Valdez v. Johnson & Johnson Consumer, Inc. and DOES 1 through 100, inclusive,* San Diego Superior Court Case No. 37-2021-00014175-CU-PO-CTL (the "State Action").

On April 1, 2021, the statute of limitations ran on Plaintiff's wrongful death claims. Plaintiff's Motion to Remand and Amend the Complaint, ECF No. 7 ("Remand Mot.") at 10:16; *see also* Defendant's Opposition to Plaintiff's Remand Mot., ECF No. 13 ("Remand Oppo.") at 6:15-16; Plaintiff's Reply in Support of Remand. Mot., ECF No. 15 ("Remand Reply") at 10:23-28. On April 7, 2021, Plaintiff served Defendant with the original complaint. Remand Oppo. at 6:17.

On May 6, 2021, Defendant removed the case on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because more than $75,000.00 is in controversy, and Plaintiff is from California while Defendant is a New Jersey citizen. ECF No. 1 at 2, 6-7.

On May 11, 2021, Defendant provided notice of this case to the JPML, stating that this case was similar to other cases pending in the MDL. *See* Plaintiff's Opposition to Defendant's Motion to Stay, ECF No. 8 ("Stay Oppo.") at 3:5-9; *see also* Exhibit "A" to

1  Stay Oppo., ECF No. 8-1 at 1-5; *In re: Johnson & Johnson Talcum Powder Products*
2  *Marketing, Sales Practices and Products Liability Litig.*, MDL No. 2738, ECF No. 2599,
3  Notice of Potential Tag-Along (providing notice of this matter to the JPML).

4        On May 13, 2021, Defendant also filed an Answer to the complaint. ECF No. 5.
5  That same day, Defendant also filed its Motion to Stay All Proceedings. Motion, ECF No.
6  6 ("Stay Mot."). On June 1, 2021, Plaintiff opposed Defendant's Motion to Stay. *See* Stay
7  Oppo." On June 7, 2021, Defendant replied. Reply, ECF No. 10 ("Stay Reply").

8        On May 14, 2021, the JPML issued a Conditional Transfer Order in response to
9  Defendant's Notice of Related Case in the JPML, which transferred this case along with
10 one other to the MDL court, where 30,000 other cases involving similar allegations
11 concerning talcum powders and gynecological cancers are pending. *See* Exhibit "B" to
12 Plaintiff's Opposition to Defendant's Motion to Stay at ECF No. 8-2 at 1-3; *see also* Stay
13 Oppo. at 3:10-17; Stay Reply at 2:5-8; Remand Oppo. at 5:15-17, 8:21-24.

14       On May 21, 2021, Plaintiff objected to the transfer order, and the JPML will hear
15 Plaintiff's Opposition to the Conditional Transfer Order on July 29, 2021. *See* Exhibit "C"
16 to Plaintiff's Opposition to Defendant's Motion to Stay at ECF No. 8-3 at 1-4; *see also*
17 Stay Oppo. at 3:18-21; Stay Reply at 2:8-12; *see also* Notice, ECF No. 14. On May 25,
18 2021, Plaintiff filed a Motion to (1) File a First Amended Complaint and (2) Remand Back
19 to State Court. *See* Remand Mot. This Motion to Amend the Complaint seeks to add two
20 parties as defendants in this case: (1) Food 4 Less of California, Inc., a California
21 corporation from whom Ms. Valdez purchased Baby Power from 2000 through 2004, and
22 (2) The Vons Companies, Inc., a Delaware corporation from whom Ms. Valdez purchased
23 Baby Power after 2004 (collectively, the "Retail Defendants"). *Id.* at 6:1-6 (citing
24 Proposed First Amended Complaint at ¶¶ 6, 7, 28, 29). On June 11, 2021, Defendant
25 opposed. *See* Remand Oppo. On June 21, 2021, Plaintiff replied. *See* Remand Reply.

26       On June 1, 2021, Plaintiff also filed an *Ex Parte* Motion to Consolidate Hearings,
27 seeking "to combine the two scheduled motions hearing—one set for June 14[th], the other
28 June 28[th]—into one hearing held on June 28, 2021." Ex Parte, ECF No. 1 at 1:26-2:1 ("Ex

1  Parte Appl."). On June 8, 2021, Defendant opposed the *Ex Parte*. Opposition, ECF No.
2  11 ("Ex Parte Oppo.").

## III.   LEGAL STANDARD

### A.   Motion to Stay

A court's power to stay proceedings is incidental to the inherent power to control the
disposition of its cases in the interests of efficiency and fairness to the court, counsel, and
litigants. *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). A stay may be granted
pending the outcome of other legal proceedings related to the case in the interests of judicial
economy. *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979).
Discretion to stay a case is appropriately exercised when the resolution of another matter
will have a direct impact on the issues before the court, thereby substantially simplifying
the issues presented. *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465
(9th Cir. 1983). In determining whether a stay is appropriate, a district court "must weigh
competing interests and maintain an even balance." *Landis*, 299 U.S. at 254-55. "[I]f there
is even a fair possibility that the stay … will work damage to some one else, the stay may
be inappropriate absent a showing by the moving party of hardship or inequity."
*Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir.
2007) (citation and internal quotation marks omitted). Thus, when "determining whether
to stay proceedings, the Court considers the following factors: (1) judicial economy; (2)
the moving party's hardship; and (3) potential prejudice to the non-moving party." *Single
Chip Sys. Corp. v. Intermec IP Corp.*, 495 F. Supp. 2d 1052, 1057 (S.D. Cal. 2007) (citing
*Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997)).

### B.   Motion for Leave to Amend

Once a responsive pleading is filed, a plaintiff can amend a complaint "only with the
opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). "The court
should freely give leave when justice so requires." *Id.*; *see also Morongo Band of Mission
Indians v. Rose,* 893 F.2d 1074, 1079 (9th Cir.1990) (stating that leave to amend is to be
granted with "extreme liberality"). "The power to grant leave to amend, however, is

1   entrusted to the discretion of the district court, which determines the propriety of a motion
2   to amend by ascertaining the presence of any of four factors: bad faith, undue delay,
3   prejudice to the opposing party, and/or futility." *Serra v. Lappin,* 600 F.3d 1191, 1200 (9th
4   Cir. 2010) (quotation marks and citation omitted).  Generally, amendments adding claims
5   are granted more freely than amendments adding parties. *Union Pacific R.R. Co. v. Nevada*
6   *Power Co.,* 950 F.2d 1429, 1432 (9th Cir. 1991).

7       **C.    Motion to Remand**

8       Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*
9   *of Am.*, 511 U.S. 375, 377 (1994).  Consequently, district courts are presumed to lack
10  jurisdiction unless the Constitution or a statute expressly provides otherwise. *Stock West,*
11  *Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989).  The party seeking to
12  establish federal jurisdiction bears the burden of establishing it. *See, e.g., McNutt v. Gen.*
13  *Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936) (providing that "the party
14  who seeks the exercise of jurisdiction in his favor . . . must allege in his pleading the facts
15  essential to show jurisdiction").  Generally, federal subject matter jurisdiction exists due to
16  the presence of a federal question, *see* 28 U.S.C. § 1331, or complete diversity between the
17  parties, *see* 28 U.S.C. § 1332.  In cases arising out of diversity jurisdiction, section 1332
18  vests district courts with "original jurisdiction of all civil actions where the matter in
19  controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is
20  between . . . citizens of different States." 28 U.S.C. § 1332(a)(1).

21      "Except as otherwise expressly provided by Act of Congress," where a plaintiff files
22  in state court a civil action over which the district courts of the United States have original
23  jurisdiction, the defendant may remove that case "to the district court of the United States
24  for the district and division embracing the place where such action is pending." 28 U.S.C.
25  § 1441(a).  A civil action otherwise removable solely on the basis of diversity jurisdiction
26  under 28 U.S.C. § 1332(a) "may not be removed if any of the parties in interest properly
27  joined and served as defendants is a citizen of the State in which such action is brought."
28  28 U.S.C. § 1441(b)(2); *see also Martinez v. Omni Hotels Mgmt. Corp.*, No. 20-CV-1924-

-6-

1  MMA (BLM), ---F. Supp. 3d---, 2021 WL 196509, at *2. "In determining whether a civil

2  action is removable on the basis of the jurisdiction under section 1332(a) of this title, the

3  citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. §

4  1441(b)(1).

5          In a case where there are more than two plaintiffs and more than two defendants,

6  complete diversity must exist, meaning that all parties on opposite sides of the case must

7  be from different states. *See, e.g., Strawbridge v. Curtiss,* 7 U.S. 267, 267

8  (1806), *overruled in part on other grounds by Louisville, C. & C.R. Co. v. Letson,* 43 U.S.

9  497 (1844), *overruled in part by Hertz Corp. v. Friend,* 559 U.S. 77, 92–93 (2010)

10 (adopting the nerve center approach to determine a corporation's citizenship, pursuant to

11 which courts determine a business' citizenship by its state of incorporation along with its

12 "principal place of business," or "nerve center," which refers "to the place where a

13 corporation's officers direct, control, and coordinate the corporation's activities"). "A

14 corporation shall be deemed a citizen of every State and foreign state by which it has been

15 incorporated and of the State or foreign state where it has its principal place of

16 business." 28 U.S.C. § 1332(c)(1).

17         Removing a case does not deprive another party "of his right to move to remand the

18 case." 28 U.S.C. § 1448. However, "[i]f after removal the plaintiff seeks to join additional

19 defendants whose joinder would destroy subject matter jurisdiction, the court may deny

20 joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e).

21 Courts strictly construe the removal statute against removal jurisdiction. *See,*

22 *e.g., Provincial Gov't of Marinduque v. Placer Dome, Inc.,* 582 F.3d 1083, 1087 (9th Cir.

23 2009). Further, "[a] defendant seeking removal has the burden to establish that removal is

24 proper." *Luther v. Countrywide Home Loans Servicing, LP,* 533 F.3d 1031, 1034 (9th Cir.

25 2008). "Any doubt about the right of removal requires resolution in favor of

26 remand." *Moore-Thomas v. Alaska Airlines, Inc.,* 553 F.3d 1241, 1244 (9th Cir. 2009).

27     **D.    *Ex Parte* Relief**

28         Rule 7(b)(1) of the Federal Rules of Civil Procedure requires all motions to (1) be

-7-

3:21-cv-00873-BEN-DEB

made in writing unless made during a hearing or trial; (2) "state with particularity the grounds for seeking the order"; and (3) "state the relief sought." Local Rule 7.1 provides that a party moving the Court for relief must file their papers 28 days before the hearing date. S.D. Cal. Civ. R. 7.1 (e)(1). Subdivision (e)(5)[2], governing motion practice and enlargements or shortening of time, provides: "All applications for orders shortening time under these rules must be submitted ex parte, be accompanied by a proposed order, and be served on all opposing parties." S.D. Cal. Civ. R. 7.1(e)(5). Further, Local Rule 73.3(g)(2) provides that "[a] motion for an order must not be made ex parte unless it appears by affidavit or declaration" that (1) "within a reasonable time before the motion the party informed the opposing party or the opposing party's attorney when and where the motion would be made" or (2) "the party in good faith attempted to inform the opposing party and the opposing party's attorney but was unable to do so, specifying the efforts made to inform them"; or (3) "for reasons specified the party should not be required to inform the opposing party or the opposing party's attorney." Finally, while a district court may shorten the usual notice period, courts generally only do so when circumstances warrant an expedited hearing. *See Anderson v. Davila*, 125 F.3d 148, 156 (3d Cir. 1997).

## IV.    **DISCUSSION**

"The MDL process seeks to 'promote the just and efficient conduct' of 'civil actions involving one or more common questions of fact [that] are pending in different districts' by permitting" the JPML to transfer such civil cases "to a single district for 'coordinated or consolidated pretrial proceedings.'" *In re Korean Air Lines Co., Ltd.*, 642 F.3d 685, 698

---

[2]    While state courts often offer a procedure to secure relief that could be secured by noticed motion on a shortened timeline, the Federal Rules of Civil Procedure contain no provisions directly addressing the filing and service of papers seeking to seek relief on a shortened notice period. Instead, Rule 65 of the Federal Rules of Civil Procedure governs temporary restraining orders, and Rule 3.5 of the California Rules of Professional Conduct governs *ex parte* communications with chambers; however, there is no Federal Rule of Civil Procedure covering *ex parte* applications similar to Rule 3.1200 of the California Rules of Court.

1 (9th Cir. 2011) (quoting 28 U.S.C. § 1407(a)). To serve the goal of promoting efficiency,
2 the district judge in the MDL proceeding "inherits the entire pretrial jurisdiction that the
3 transferor district judge would have exercised if the transfer had not occurred," including
4 the power to decide pretrial motions, like the instant motion to amend the complaint,
5 motion to stay, and motion to remand before this Court. *Id.* at 699. "The purpose of such
6 transfers is to further judicial economy and to eliminate the potential for conflicting pretrial
7 rulings." *Good v. Prudential Ins. Co. of Am.*, 5 F. Supp. 2d 804, 805 (N.D. Cal. 1998).
8 Consequently, "[c]ourts frequently grant stays pending a decision by the MDL Panel
9 regarding whether to transfer a case." *Id.* That being said, a conditional transfer order
10 "does not affect or suspend orders and pretrial proceedings in any pending federal district
11 court action and does not limit the pretrial jurisdiction of that court." J.P.M.L. R. 1.5,
12 2.1(d). Thus, while a conditional transfer order is pending, a district court retains the
13 discretion to control its docket, including by staying proceedings or remanding the case.
14 *See Landis v. North American Co.,* 299 U.S. 248, 254-55 (1936); *see also Couture v.*
15 *Hoffman-La Roche, Inc.*, No. C-12-2657 PJH, 2012 WL 3042994, at *1 (N.D. Cal. July 25,
16 2012) (granting the defendants' motion to stay proceedings pending a transfer by the JPML
17 after having vacated the hearing on the plaintiff's motion to remand, finding it appropriate
18 to address the motion to stay first).

19      Defendant asks the Court to stay all proceedings in this action pending its likely
20 transfer into the New Jersey MDL in order to coordinate pretrial matters in all talc product
21 cases pending in federal courts. Stay Mot. at 2:7-10. Plaintiff opposes, arguing "the stay
22 motion is premature" because Plaintiff has a pending motion to remand and amend the
23 complaint (albeit one that was filed after Defendant moved for a stay) "that asks this Court
24 to return this case to state court." Stay Oppo. at 2:2-6. Plaintiff also argues that the Court
25 "should resolve that motion first since it involves a preliminary question of whether this
26 Court has jurisdiction over this case." *Id.* at 2:5-8. Defendant replies by arguing that the
27 Court should stay this case, including the determination on Plaintiff's Motion to Remand
28 and Amend the Complaint, because (1) the JPML should determine Plaintiff's pending

3:21-cv-00873-BEN-DEB

1 motions and (2) Plaintiff's attempt to amend the complaint is nothing more than a meritless

2 attempt at fraudulent joinder. Stay Reply at 3.

3          The Ninth Circuit has held that because federal courts possess limited jurisdiction

4 while the jurisdiction of state courts is "not so limited, . . . [n]o motion, timely or otherwise,

5 is necessary" for district courts to remand when they lack jurisdiction. *Polo v. Innoventions*

6 *Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016); *see also* 28 U.S.C. § 1447 (requiring

7 district courts to remand a case "[i]f at any time before final judgment it appears that the

8 district court lacks subject matter jurisdiction"). Thus, "federal courts normally must

9 resolve questions of subject matter jurisdiction before reaching other threshold issues."

10 *Potter v. Hughes*, 546 F.3d 1051, 1061 (9th Cir. 2008) (citing *Sinochem Int'l Co. v. Malay.*

11 *Int'l Shipping Corp.*, 549 U.S. 422, 436 (2007)). However, the Supreme Court has given

12 district courts discretion to resolve other issues before a jurisdictional issue where resolving

13 a jurisdictional issue first might prove burdensome. *Sinochem*, 549 U.S. at 425. In that

14 vein, because MDL cases serve to advance interests of "judicial economy and consistency,"

15 motions to stay may (but not must) be considered before remand motions. *See Wickens v.*

16 *Blue Cross of Cal., Inc.*, No. 15-cv-834-GPC(JMA), 2015 U.S. Dist. LEXIS 79274, at *6-

17 7 (S.D. Cal. June 18, 2015) (Curiel, J.). At the same time, the JPML has expressly held

18 that while a conditional transfer order is pending, a district court retains the discretion to

19 either (1) address a motion to remand or (2) defer resolution of the motion to remand and

20 wait for a transfer order. *In re Asbestos Prods. Liab. Litig.*, 170 F. Supp. 2d 1348, 1349

21 n.1 (Jud. Pan. Mult. Lit. 2001). District courts within the Ninth Circuit have favored

22 addressing jurisdictional issues prior to staying a case where the jurisdictional issue can

23 easily be resolved. *See, e.g., Wickens*, 2015 U.S. Dist. LEXIS 79274, at *6-7 (denying the

24 defendants' motion to stay as moot due to the JPML's decision to transfer the case while

25 also denying the plaintiff's motion to remand and granting the plaintiff leave to amend)[3];

26

27 [3]       Plaintiff cites to only one case from this district, *Wickens*, for the proposition that

28 "the original federal court typically resolves the motion to remand first before addressing
the motion for stay." Remand Oppo. at 4:10-20 (citing, *inter alia, Wickens*, 2015 U.S. Dist.

-10-

1  *see also* Conroy *v. Fresh Del Monte Produce Inc.*, 325 F. Supp. 2d 1049, 1053-54 (N.D.

2  Cal. 2004) (denying the defendants' motion to stay while granting the plaintiff's motion to

3  remand despite noting that "[o]ften, deference to the MDL court for resolution of a motion

4  to remand provides the opportunity for the uniformity, consistency, and predictability in

5  litigation that underlies the MDL system") (citing 28 U.S.C. § 1407).

6      Bearing the above guidance in mind, the Court first, considers Plaintiff's *Ex Parte*

7  Application to Consolidate Hearing Dates, which it **DENIES** as moot given it considers all

8  pending motions concurrently in this order.   Second, the Court considers Defendant's

9  Motion to Remand because if the Court lacks jurisdiction, it also lacks the authority to enter

10  a stay or grant Plaintiff's request for leave to amend.   *See, e.g., H.R. ex rel. Reuter v.*

11  *Medtronic, Inc.*, 996 F. Supp. 2d 671, 675 n.2 (S.D. Ohio 2014) (noting that the plaintiff's

12  "motion to remand must be resolved before the motion to dismiss, because if remand is

13  appropriate, then the state court should decide the motion to dismiss").   Moreover,

14  "[g]enerally, motions to remand should be resolved before the panel acts on the motion to

15  transfer so the federal court can assure itself of jurisdiction before the case transfers to the

16  MDL." *Nessel v. Chemguard, Inc.*, No. 1:20-cv-1080, 2021 U.S. Dist. LEXIS 39175, at

17  *6 (W.D. Mich. Jan. 6, 2021) (denying the plaintiffs' motion to remand, which was

18  resolved while a conditional transfer order had been issued by the JPML).   This serves the

19  purpose of judicial economy because only cases falling within the limited federal

20  jurisdiction qualify for transfer to an MDL. *See* JPML Rule 1.1(h).   However, because a

21  motion to remand considers the complaint as of the date of removal, meaning that a plaintiff

22  cannot destroy diversity jurisdiction by amending a complaint after removal, the Court

23  ───────────────────────────────

24  LEXIS 79274, at *1).   In *Wickens*, the Court ruled on (by denying) the plaintiff's motion
    to remand while also denying the defendants' motion to stay as moot and granting the

25  plaintiff leave to file an amended complaint. 2015 U.S. Dist. LEXIS 79274, at *1.   Even
    though the court granted the plaintiff leave to amend the complaint, it denied the motion to

26  remand because it found the allegations of the complaint at the time of removal showed
    minimal diversity by a preponderance of the evidence. *Id.* at *11.   Likewise, in this case,

27  as discussed in the following section the allegations of the complaint at the time of removal

28  put any dispute over federal jurisdiction beyond question.

-11-

1    **DENIES** Plaintiff's Motion to Remand. *See, e.g.*, *Williams v. Costco Wholesale Corp.*,

2    471 F.3d 975, 976 (9th Cir. 2006) (reversing a district court's order remanding a case where

3    it had been removed on the basis federal question jurisdiction, but the plaintiff later

4    amended complaint to eliminate the only federal claim and add new state law claims, and

5    then, filed a motion to remand).

6         Third, the Court addresses Plaintiff's Motion for Leave to Amend the Complaint to

7    add two non-diverse defendants. Had Plaintiff sought to amend separately and before he

8    moved to remand, the Court still would have evaluated whether Plaintiff sought to add the

9    non-diverse defendants in the vein of fraudulent joinder. *See, e.g.*, *McGrath v. Home Depot*

10   *USA, Inc.*, 298 F.R.D. 601, 604-05, 607 (S.D. Cal. 2014) (Curiel, J.) (deciding that the

11   plaintiff's second amended complaint sought to fraudulently join non-diverse individual

12   defendants). This evaluation would have led the Court to conclude that such defendants

13   should not be joined. Thus, while courts are liberally inclined to grant leave to amend,

14   *DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992), given the

15   amendments fail to substantively change the complaint and merely seek to add two non-

16   diverse parties, the presumption of fraudulent joinder would apply. *Compare Clinco v.*

17   *Roberts*, 41 F. Supp. 2d 1080, 1083 n.2 (C.D. Cal. 1999) (noting that in light of the fact

18   that the plaintiff was aware of the removal at the time he filed the amended complaint, and

19   the original and first amended complaints were substantially similar—other than a few

20   editorial differences and the addition of new non-diverse defendants, "one could justifiable

21   suspect that . . . amendment of the complaint was caused by the removal rather than an

22   evolution of his case") *with* Remand Mot. at 5:26-28 (noting that "[t]he amended complaint

23   is nearly identical to the original complaint," and the only "material difference is that Mr.

24   Valdez has now named two new defendants, both retailers"). More importantly, and as

25   relates to the concurrently filed remand motion, courts "have long held that post-removal

26   amendments to the pleadings cannot affect whether a case is removable, because the

27   propriety of removal is determined solely on the basis of the pleadings filed in state court."

28   *Williams*, 471 F.3d at 976.

-12-

Finally, the Court addresses Defendant's Motion for a Stay. Plaintiff's opposition to the stay only seemed to concern whether the Court addressed Plaintiff's Motion to Remand and Motion for Leave to Amend before granting the Stay. Having done so, the Court finds no reason for declining to grant a stay in this case until the issue of whether this case will be transferred into the MDL is resolved conclusively. Thus, Defendant's Motion for a Stay is **GRANTED**.

### A.    Plaintiff's *Ex Parte* Application is Moot

Local Rule 7.1 requires that a hearing date must be requested from the clerk of the judge to whom a case is designed "for any matters on which a ruling is required." S.D. Cal. Civ. R. 7.1(b); *see also id.* at subdivision (f) (requiring a motion to include the "hearing date and time"). Here, Plaintiff never requested a hearing date for his "*Ex Parte* Application" as evidenced by the lack of hearing date or time on the caption for the Application, and as such, the Application should have been rejected. S.D. Cal. Civ. R. 7.1(e)(7). However, despite this procedural error, the Court considers the merits..

As of the date of this order, the hearing on Defendant's Motion to Stay was scheduled for Monday, June 14, 2021, at 10:30 a.m., and has been submitted on the papers. However, the hearing on Plaintiff's Motion for Leave to File a FAC and Remand Back to State Court was scheduled for two weeks later, on Monday, June 28, 2021, at 10:30 a.m. Plaintiff asks the Court to continue its ruling on Defendant's Motion to Stay until Monday, June 28, 2021, at 10:30 a.m., so it can address all matters simultaneously and rule on Plaintiff's Motion to Remand first. Plaintiff contends that "given the nature of his remand motion, this Court should address that motion first—and if it grants his motion to remand, it will moot out the stay request." Ex Parte Appl. at 2:12-14. Defendant opposes by arguing that its "Motion to Stay has been fully briefed and is appropriate for decision without a hearing." Ex Parte Appl. Oppo. at 1:28-2:1. Further, Defendant argues that because "these matters are routinely considered by the MDL court[,] there is no need for this Court become familiar with the facts and parties of this case where this matter will likely be transferred

3:21-cv-00873-BEN-DEB

by mid-to late July to the MDL." *Id.* at 2:2-4.

Because the Court has submitted all pending motions in this case on the papers and resolves them now, the Court finds that Plaintiff's request to consolidate the hearings is moot. *See, e.g., Tur v. YouTube, Inc.*, 562 F.3d 1212, 1214 (9th Cir. 2009) ("we conclude that an issue is moot when deciding it would have no effect within the confines of the case itself"). Thus, the Court **DENIES AS MOOT** Plaintiffs' *Ex Parte* Motion for an Order Consolidating the Hearing Dates.

## B.   Plaintiff's Motion to Remand

When the district court finds jurisdiction lacking, it "generally *must* remand the case to state court, ***rather than* dismiss it.**" *Polo*, 833 F.3d at 1196 (emphasis added). On the one hand, the Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," *Gaus*, 980 F.2d at 566. Further, the district court retains the ability to remand a case at any time before final judgment, even absent the filing a motion to remand. *Polo*, 833 F.3d at 1196; *see also* 28 U.S.C. § 1447. On the other hand, courts presume that a post-removal amendment to a complaint, which is substantively identical to the operative complaint but merely adds a new non-diverse defendant, arises out of an intent to defeat diversity and should not be permitted. *Clinco*, 41 F. Supp. 2d at 1083.

Plaintiff argues that the "Court should return this wrongful-death action to state court where it belongs" because Plaintiff wishes to join the two Retail Defendants "who sold his wife the Baby Power . . . in an amended complaint." Remand Mot. at 4:1-10. He argues that "once this Court permits Mr. Valdez to add in the retailer defendants, it will need to remand this case to state court" because "[o]ne of the new defendants is a citizen of California, just like Mr. Valdez," resulting in a destruction of diversity jurisdiction. *Id.* at 4:12-16. Defendant opposes by asking the Court to "allow the MDL to decide Plaintiff's Motion to File First Amended Complaint and Remand Back to State Court." Remand Oppo. at 5:2-4. Alternatively, Defendant argues that the Court should deny Plaintiff's motion on the basis that (1) proposed Retail Defendants are not necessary parties in this case; (2) Plaintiff would not be prejudiced by the denial of his motion; and (3) Plaintiff

-14-

1    seeks the "proposed amendment in bad faith for the sole purpose of destroying diversity in
2    this properly removed case." *Id.* at 5:5-9. Plaintiff replies that Defendant's opposition
3    does not dispute the Rules 15 and 20 of the Federal Rules of Civil Procedure permit
4    Plaintiff to amend the complaint to add the Retail Defendants. *See* Remand Reply at 6:4-
5    6. However, Plaintiff's reply brief largely focuses on the reasons the Court should allow
6    him to amend the complaint because Plaintiff concedes absent amendment, no basis for
7    remand currently exists. *See id.* at 14:1-9.

8         Plaintiff's claims arise under California law, and Defendant removed on the basis of
9    diversity jurisdiction. *See* 28 U.S.C. § 1332. Plaintiff's Motion to Remand admits that
10   currently, the Court has diversity jurisdiction, and that any remand is contingent on the
11   Court granting Plaintiff leave to amend. *See, e.g.*, Remand Mot. at 13:6-13 ("If this Court
12   permits Mr. Valdez to file the First Amended Complaint, . . . this Court will ***no longer*** have
13   diversity jurisdiction over this action") (emphasis added). Indeed, at the time of removal,
14   Plaintiff was (and still is) "a citizen of California, and Johnson & Johnson was (and still is)
15   "a New Jersey corporation with its principal place of business in New Jersey." Remand
16   Oppo. at 5:12-13, 8:17-21; *see also* Compl. at 7, ¶¶ 4-5. However, the frame of reference
17   when ruling on a motion to remand to state court is the four corners of the operative
18   complaint at the time of removal. *Gracier v. Edwards Dental Supply Co.*, 86 F. Supp. 956,
19   957-58 (N.D. Cal. 1949) (citing 28 U.S.C. § 1447(c); *St. Paul Mercury Indemnity Co. v.*
20   *Red Cab Co.*, 308 U.S. 283 (1939)). Here, the operative complaint clearly demonstrates
21   diversity existed at the time of removal, which again, Plaintiff does not dispute. Remand
22   Oppo. at 5:12-13, 8:17-21; *see also* Compl. at 7, ¶¶ 4-5. Thus, "[e]vents which have
23   occurred subsequent to the filing of the complaint-and after the cause was removed to the
24   District Court-are not relevant in passing upon the issue of jurisdiction." *Gracier*, 86 F.
25   Supp. at 857. Consequently, a plaintiff cannot destroy diversity jurisdiction by amending
26   a complaint after removal. *Williams*, 471 F.3d at 976.

27        Plaintiff cites to two cases which remanded to the state court after permitting the
28   plaintiff to add a nondiverse defendant: *Dordoni v. FCA US LLC*, No. ED-cv-201475-

-15-

JGBSHKX, 2020 WL 6082132, at *1 (C.D. Cal. Oct. 15, 2020) and *Stout v. Int'l Bus. Machines Corp.*, No. CV-164914-FMOAJWX, 2016 WL 4528958, at *1 (C.D. Cal. Aug. 30, 2016). However, both of those cases are inapposite because they dealt with a plaintiff's motion to remand filed *after* the plaintiff had already amended the complaint to add the non-diverse defendant, while in this case, Plaintiff has not yet amended the complaint and his basis for remanding the case depends on his ability to amend the complaint. *See Dordoni*, 2020 WL 6082132, at *1, 5 (denying the defendants' motion to strike the plaintiffs' amended complaint while granting the plaintiff's motion to remand because the six *Palestini* factors weighed in favor of joining the non-diverse defendants, and as a result, joinder was proper); *Stout*, 2016 WL 4528958, at *1, 9-10 (same). Thus, neither case supports remanding this case.

Finally, Plaintiff points out that even though Defendant argues that the MDL court "has previously addressed the viability of claims involving retailers and the propriety of removals in circumstances similar to this case," and as such, should handle this motion to remand, Remand Oppo. at 9:2-4, Defendant fails to cite a single such case, much less its outcome. The Court's own research located two such cases. *See, e.g., In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Prod. Litig.*, No. CV 17-4034(FLW), 2018 WL 4771908, at *8 (D.N.J. Oct. 3, 2018) (granting the plaintiff's motion to remand where the plaintiff's allegations showed "an actual intention to proceed against Rite Aid"); *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Prod. Litig.*, No. CV 16-7891(FLW), 2017 WL 4570289, at *1 (D.N.J. Oct. 12, 2017) (granting the plaintiff's motion to remand where, without inquiring into the merits of the plaintiff's claim, because the allegations showed an actual intention to proceed against at least one of the non-diverse defendants, which was a retail seller of the talcum powder). However, in both cases, the plaintiff was not seeking to remand on the basis of a not-yet filed amended complaint, which *would* add non-diverse defendants, as is the case here. Instead, the non-diverse defendants in both *In re Johnson & Johnson* cases had already been named in the complaint in existence at the time of removal. *See* 2017 WL 4570289, at *2 (noting that

-16-

the non-diverse defendants, Schwegmann and K&B, were named in the original complaint); 2018 WL 4771908 (noting that the non-diverse defendant, Rite-Aid, had been named in the original complaint). Here, on the other hand, the complaint at both the time of removal as well as the time Plaintiff sought remand contained only diverse parties. *See generally* Remand Mot. As such, complete diversity existed at the time of removal.

By seeking to amend the complaint at the same time Plaintiff moves to remand and basing that motion to remand off the not-yet filed FAC, Plaintiff has "shot himself in the foot" so to speak. The Court must determine the remand motion on the basis of the complaint as it existed at the time of removal. *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 883 (9th Cir. 2013); *Williams*, 471 F.3d at 976. Neither party disputes that the operative complaint at the time of removal, which is the only complaint that matters when ruling on a motion to remand, creates a basis for diversity jurisdiction. Thus, the Court **DENIES** Plaintiff's Motion to Remand this Case.

## C.    Plaintiff's Motion for Leave to File the FAC

Courts "have long held that post-removal amendments to the pleadings cannot affect whether a case is removable, because the propriety of removal is determined solely on the basis of the pleadings filed in state court." *Williams*, 471 F.3d at 976. Further, generally, amendments adding claims are granted more freely than amendments adding parties. *Union Pacific R.R. Co. v. Nevada Power Co.*, 950 F.2d 1429, 1432 (9th Cir. 1991). Plaintiff argues that the "Court should permit Mr. Valdez's amendment" because it is timely and seeks to join two defendants jointly responsible with Defendant for his wife's death. Remand Mot. at 4:10-12. He points out that the FAC "is nearly identical to the original complaint" with the exception of adding the two new defendants, both retailers whom Plaintiff alleges sold the Baby Powder to the Decedent. *Id.* at 5:26-28.

Despite seeking the Court's permission to amend his complaint, Plaintiff argues that he "can add Food 4 Less and Vons as a matter of right under Federal Rule of Civil Procedure 15," which "empowers a party to amend a complaint '21 days after service of a responsive pleading' as long as the complaint has not been amended before." Remand

Mot. at 6:27-7:2 (citing Fed. R. Civ. P. 15(1)(B)). Thus, because Defendant filed its responsive pleading (an answer) on May 13, 2021, and Plaintiff moved to file an amended complaint for the first time on May 25, 2021, or within twenty-one (21) days, Plaintiff may amend without the Court's leave. *Id.* at 7:2-7. Indeed, under the Federal Rules of Civil Procedure ("FRCP"), "[a] party may amend its pleading once as a matter of course within" twenty-one (21) days of (1) serving the pleading or (2) being served with a responsive pleading or motion brought pursuant to Rule 12(b) of the Federal Rules of Civil Procedure." FED. R. CIV. P. 15(a)(1). However, under 28 U.S.C. § 1447(e) ("Section 1447(e)"), where after a defendant has removed a case to federal court, a "plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." *See also* Remand Mot. at 7:24-8:9 (quoting 28 U.S.C. § 1447(e)). Indeed, Section 1447(e) constrains a plaintiff's ability to amend as of right under FRCP 15. *See* 28 U.S.C. § 1447(e). "In other words, plaintiffs need to get a court's permission before joining non-diverse parties following removal." *Warner v. Select Portfolio Servicing*, 193 F. Supp. 3d 1132, 1136 (C.D. Cal. 2016) (citing *McGrath*, 298 F.R.D. at 607).

The Ninth Circuit has yet to resolve a split of authorities "on what standard governs the Court's decision whether to permit joinder of the individual Defendants in this matter." *McGrath*, 298 F.R.D. at 606. The majority of courts addressing the relationship between Section 1447(e) and FRCP 15(a)(1), including two circuit courts and courts within the Central, Southern, and Eastern District Courts of California, "have found that a conflict exists between the two provisions in circumstances such as those presented in this case." *McIntosh v. Hess Corp.*, No. CV 2020-0098, 2021 WL 2143327, at *5 n.5 (D.V.I. May 25, 2021). These courts conclude "that once a case has been removed to federal court, the court must scrutinize a diversity-destroying amendment to ensure that it is proper under 28 U.S.C. section 1447(e)." *McGrath*, 298 F.R.D. at 606-07; *Clinco*, 41 F. Supp. 2d at 1088 (C.D. Cal. 1999) ("[A] diversity-destroying amendment must be considered under the standard set by § 1447(e) even if it is attempted before a responsive pleading is served.");

*Hardin v. Wal-Mart Stores, Inc.*, 813 F. Supp. 2d 1167, 1173 (E.D. Cal. 2011), *aff'd in part,* 604 F. App'x 545 (9th Cir. 2015) ("Plaintiffs may not circumvent 28 U.S.C. § 1447(e) by relying on [Fed. R. Civ. P.] 15(a) to join non-diverse parties."). Some of the courts within the majority find that FRCP "15(a)(1) is the more general rule and that it conflicts with the more specific provisions of § 1447(e) when the amendment attempts—after removal to federal court—to add a new, nondiverse party." *McIntosh*, 2021 WL 2143327 at *5 n.5 (citing, *inter alia*, *McGrath*, 298 F.R.D. at 601). "Other courts simply apply § 1447(e) whenever a nondiverse defendant is added after removal without addressing the difference between amendments as a matter of course and amendments requiring leave of court." *Id.* (citing various cases from the Fifth Circuit).

"A minority of courts, however, find no conflict between § 1447(e) and Rule 15(a)(1), even when a party files an amendment post-removal that adds a nondiverse party." *McIntosh*, 2021 WL 2143327 at *6 (citing, *inter alia*, *Matthews Metals Prod., Inc. v. RBM Precision Metal Prod., Inc.*, 186 F.R.D. 581, 583 (N.D. Cal. 1999) (allowing amendment of plaintiff's complaint under Rule 15, finding newly-named defendants properly joined under Rule 20(a), and remanding the case to state court)); *see also Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 985 (N.D. Cal. 2011) (recognizing an amended complaint that "merely added certain claims and parties and deleted certain claims, as [p]laintiffs were permitted to do under Rule 15(a)"). Those "courts apply the 'plain language' principle of statutory construction by noting that a plaintiff amending as a matter of course is not 'seek[ing] to join' additional defendants within the meaning of 28 U.S.C. § 1447(e)." *Id.* They reason that "because amendments as a matter of course are automatic and do not require approval of the court, § 1447(e) is not implicated." *Id.*; *but see McGrath*, 298 F.R.D. at 607 (acknowledging that "while Rule 15(a) addresses amendment of pleadings generally, 28 U.S.C. section 1447(e) addresses the specific situation of post-removal joinder of non-diverse defendants"); *compare* Fed. R. Civ. P. 15(a)(1) with 28 U.S.C. § 1447(e). "Courts following the minority rule review the addition of the newly added defendant under the doctrine of fraudulent joinder," which does not

-19-

consider the motive of adding the defendant, only the viability of the claim against the defendant. *McIntosh*, 2021 WL 2143327 at *6.

In the past, courts within the Southern District of California have adopted "the approach of the line of cases applying section 1447(e) to scrutinize the propriety of a diversity-destroying amendment pursuant to Rule 15(a)." *McGrath*, 298 F.R.D. at 607. This Court finds no reason to diverge from the other courts within this district, which scrutinize diversity destroying amendments under the *Palestini* factors.[4]   Under this

---

[4] The Court notes that more recent cases have proceeded by analyzing the *Palestini* factors even though it is unclear whether such analysis is even required. The Supreme Court has "consistently held that if jurisdiction exists at the time an action is commenced," as was the case here, "such jurisdiction may not be divested by subsequent events." *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991). In *Freeport*, the plaintiffs sued the defendants for breach contract in the district court in Colorado, alleging federal jurisdiction on the basis of diversity of citizenship given the plaintiffs were Delaware corporations and the defendant was a Kansas corporation with its principal place of business in Colorado. 498 U.S. at 427. After filing suit, however, the plaintiff transferred its interest in in the contract at issue to another entity, and the entity, like the defendant, had limited partners that were citizens of Kansas and Colorado. *Id.* The plaintiffs sought leave to amend their complaint to substitute in the assignee of the contract as the plaintiff under Rule 25(c) of the FRCP, and the district court permitted the substitution but did not remove the original plaintiff as a party, and ultimately, held in plaintiff's favor. *Id.* The Tenth Circuit Court of Appeals, however, reversed the decision and dismissed the case for lack of jurisdiction due to the substituted plaintiff destroying jurisdiction. *Id.* The Supreme Court reversed the Court of Appeals, holding that the record "establish[ed] that the plaintiffs and defendant were diverse at the time the breach-of-contract action arose and at the time that federal proceedings commenced." *Id.* at 428. The record also established that the new plaintiff was not an "indispensable" party at the time the complaint was filed. *Id.* Thus, because "[d]iversity jurisdiction, once established, is not defeated by the addition of a nondiverse party to the action," the Supreme Court reversed the Tenth Circuit's dismissal for lack of jurisdiction. *Id.* at 428-29. The Court notes that the *Freeport* decision took place after the amendments to Section 1447(e).

Although *Freeport* involved a case originally filed in (rather than removed to) federal court and a substitution of parties rather than an amendment, this Court finds that it still represents binding Supreme Court authority establishing that even if this Court were to permit the amendment Plaintiff seeks, because federal jurisdiction existed under the original complaint at the time of removal, Plaintiff would not be able to defeat such jurisdiction by adding the Retail Defendants. *See also AIG Prop. Cas. Co. v. Green*, 172

-20-

approach, courts considering whether to permit the joinder of a party that will destroy diversity jurisdiction under Section 1447(e) consider whether (1) the party sought to be joined is needed or would be joined under Rule 19(a) of the FRCP; (2) the statute of limitations would preclude an original action against the new defendant(s) in state court; (3) the plaintiff inexplicably delayed in requesting joinder; (4) the plaintiff intends to join the new defendant solely to defeat federal jurisdiction; (5) the plaintiff's claims against the new defendant appear valid; and (6) denying the joinder will prejudice the plaintiff. *McGrath*, 298 F.R.D. at 607 (citing *IBC Aviation Servs., Inc. v. Compania Mexicana de Aviacion, S.A. de C.V.*, 125 F. Supp. 2d 1008, 1011 (N.D. Cal. 2000) (citing *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 691 (9th Cir. 1998); *Palestini Gen. Dynamics Corp.*, 193 F.R.D. 654, 658 (S.D. Cal. 2000))).

As outlined below, this Court finds that Plaintiff seeks to improperly add the Retail Defendants because (1) they are not a necessary and indispensable party under FRCP 19(a); (2) the statute of limitations would preclude an original action against the Retail Defendants in state court; (3) although the plaintiff did not "inexplicably delay" in filing his motion to remand, the timing of his motion is suspicious; (4) the plaintiff appears to join the Retail Defendants solely to defeat federal jurisdiction; (5) the plaintiff's claims against the Retail Defendants appear weak; and (6) denying the joinder will prejudice the plaintiff. *McGrath*, 298 F.R.D. at 607-09.

### 1. *The Retail Defendants Are Not Necessary Parties*

Plaintiff argues that Food 4 Less and Vons are necessary parties because they "were both intimately involved in the wrong Ms. Valdez (and thus Mr. Valdez) suffered" as they

---

F. Supp. 3d 468, 474 (D. Mass. 2016) ("[A] plaintiff cannot circumvent diversity by artful pleading; otherwise, 'a plaintiff could leave non-diverse defendants out of the original lawsuit and then wait for them to be impleaded or otherwise joined.'") (quoting *In re Olympic Mills Corp.*, 477 F.3d 1,11 (1st Cir. 2007)). In other words, either way, Plaintiff's Motion to Remand must be denied, and the Court suspects Plaintiff's motive in seeking to amend the complaint was to secure a remand to the state court and avoid consolidation into the MDL. Nonetheless, because the majority of cases, especially within the Southern District, proceed by analyzing the *Palestini* factors, this Court does so as well.

"both sold Ms. Valdez the defective product that led to her death" and "their conduct is not just 'tangentially related' to this suit." Remand Mot. at 9:20-25. Plaintiff contends that "[u]nder California law, they are both liable (like Johnson & Johnson) under a strict-products liability theory." *Id.* at 9:20-24 (citing *Arriaga,* 167 Cal. App. 4th at 1534-35).

Even though the standard proves more restrictive than the standard for amendment under Section 1147(e), district courts considering a post-removal motion to amend a complaint by seeking to add a non-diverse defendant consider whether that party would qualify as a necessary party under Rule 19 of the FRCP. *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1022 (C.D. Cal. 2002) (citing *IBC*, 125 F. Supp. 2d at 1011-12). Rule 19(a) of the FRCP requires mandatory joinder of a person subject to service of process, who meets its requirements, and if joined, would not deprive the court of subject-matter jurisdiction. Rule "19(a) provides that a party is 'necessary' in two circumstances: (1) when complete relief is not possible without the absent party's presence, or (2) when the absent party claims a legally protected interest in the action." *United States v. Bowen*, 172 F.3d 682, 688 (9th Cir. 1999) (quoting *Yellowstone County v. Pease,* 96 F.3d 1169, 1172 (9th Cir. 1996)). However, "the fact that a third party indemnifies one of the named parties to the case does not, as a general rule, influence the diversity analysis." *Lewis v. Clarke*, 137 S. Ct. 1285, 1294 (2017). Rather, "[t]he standard is met when failure to join will lead to separate and redundant actions, but it is not met when defendants are only tangentially related to the cause of action or would not prevent complete relief." *Boon*, 229 F. Supp. 2d at 1022 (internal quotations omitted).

"A defendant is a necessary party if "there is a high degree of involvement by the defendant in the occurrences that gave rise to the plaintiff's cause of action." *McGrath*, 298 F.R.D. at 608. Conversely, a party fails to qualify as a necessary party where that party's absence would not prevent the plaintiff from obtaining complete relief. *See Bowen*, 172 F.3d at 688; *see also Aqua Connect, Inc. v. Code Rebel, LLC*, No. CV 11-5764 MANX, 2012 WL 1535769, at *2 (C.D. Cal. Apr. 27, 2012).

Here, first, because the Retail Defendants, if joined, would deprive the court of

subject-matter jurisdiction, they *prima facie* fail to qualify as necessary parties. *See* FED. R. CIV. P. 19 (defining a "necessary party" as one that, if joined, would not destroy diversity jurisdiction). Second, even if the Retail Defendants did not destroy diversity jurisdiction, they are not necessary for the Court to afford complete relief to Plaintiff. Plaintiff has failed to explain any type of relief that could only be secured against the Retail Defendants but not Johnson & Johnson. Moreover, under FRCP 19(b), which evaluates whether the Court should proceed among the existing parties when a necessary party cannot be joined, or alternatively, dismiss the case, courts consider (1) the extent to which the plaintiff's ability to secure a judgment in the party's absence might prejudice existing parties or the missing party; (2) the extent to which any such prejudice could be avoided by protective provision in the judgment, shaping the relief, or other measures; (3) whether a judgment rendered in the party's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action was dismissed for nonjoinder. Applying these factors, even if the Court found the Retail Defendants to be necessary parties, again, the Court notes that Plaintiff has not shown (1) he will be prejudiced in his ability to secure relief from Johnson & Johnson; (2) whether any alleged prejudiced could be avoided; and/or (3) whether a judgment in the absence of the Retail Defendants would be inadequate for some reason.

Defendant argues that "[t]his Court should find that the amendment of the Original Complaint and joinder is not proper because the Retail Defendants are not necessary parties and the underlying motive for the proposed amendment is to destroy diversity." Remand Oppo. at 10:12-14. First, Defendant also contends that Plaintiff can secure complete relief in their absence. *Id.* at 10:26-28. Thus, according to Defendant, this *Palestini* factor weighs against joinder because (1) "the Retail Defendants had no role in the manufacturing, labeling, marketing or distribution of the product so any claim that the Retail Defendants had a 'high degree of involvement' is baseless," *id.* at 10:27-11:2; (2) "Plaintiff's allegations in the draft amended complaint fail to provide any factual basis for his claims against these Retail Defendants beyond the mere fact that the product was sold

3:21-cv-00873-BEN-DEB

in their stores," Remand Oppo. at 10:2-4; and (3) "Plaintiff did not even allege a basis for recovery against the Retail Defendants," *id.* at 11:4-6. Defendant elaborates that Plaintiff's Motion fails to cite any case law directly stating that retail sellers qualify as a necessary party, and the fact that "a large percentage of the 30,000 plus cases in the Talc MDL have no retail defendant is very telling." *Id.* at 3:13-14.

The addition of the Retail Defendants to this lawsuit would destroy diversity, depriving the Court of subject-matter jurisdiction. However, they are not necessary to afford complete relief. In *McGrath*, the Court found the individual defendants were not necessary parties under the first factor because the allegations against the new individual defendants (1) did "not indicate that the individual Defendants are either necessary to or highly involved in Plaintiff's allegations against Defendant Home Depot USA, Inc."; (2) were "brief and allege[d] no basis for recovery against the individuals separate and apart from the relief sought against" Home Depot as their employer; and (3) did not allege "actions by the individual Defendants outside the scope of their employment, or any basis for distinguishing" them from the other Home Depot employees named in the SAC but not named as defendants. Similarly, in this case, Plaintiff's allegations against Retail Defendants do no indicate that (1) they were necessary of highly involved in Plaintiff's damages as they never alleged that Retail Defendants had anything to do with manufacturing or designing the Baby Powder or that they had reason to know it was dangerous and reasonably should have warned Decedent; (2) any basis exists for naming them beyond the fact that they distributed Defendant's product (such as Defendant's potential insolvency); and (3) any basis exists for naming them over the presumably thousands of other retailers who distributed Johnson & Johnson's Baby Powder.

Plaintiff alleges that Retail Defendants' liability stems from their sale and distribution of Johnson & Johnson's product. Thus, at the end of the day, Defendant would be liable for the manufacturing of the Baby Powder, and ultimately, likely responsible for any behavior (such as sales or distribution of its product) for which Retail Defendants may be responsible. As a result, not only is it improper for the Court to consider their citizenship

-24-

post-removal and pre-amendment, but it appears Plaintiff's only reason for raising their citizenship may be to destroy diversity. Either way, the Retail Defendants are not an indispensable party.[5]

## 2. *Statute of Limitations*

"When a claim is timely filed in state court and then removed, a finding that the statute of limitations would preclude the filing of a new, separate action against a party whose joinder has been denied in the federal proceeding, may warrant remand." *Murphy v. Am. Gen. Life Ins. Co.*, 74 F. Supp. 3d 1267, 1284 (C.D. Cal. 2015); *see also Dordoni*, 2020 WL 6082132 at *4 (holding that "[b]ecause Plaintiffs would not be time-barred from filing a new action in state court, the second factor does not support joinder").

Plaintiff argues that he cannot file a new lawsuit against Food 4 Less and Vons in

---

[5]    Plaintiff also argues that adding Food 4 Less and Vons to the complaint complies with Rule 20 of the FRCP, dealing with permissive joinder, because the new defendants are jointly and severally liable for Plaintiff's wife's purchase and use of Baby Powder that eventually killed her. Remand Mot. at 7:8-17. He contends that both Retailer Defendants are liable under the same strict products liability theory. *Id.* at 7:17-19 (citing *Arriaga v. CitiCapital Com. Corp.*, 167 Cal. App. 4th 1527, 1534 (2008) (noting that "[b]eyond manufacturers, . . . retailers engaged in the business of distributing goods to the public are strictly liable in tort for personal injuries caused by defects in those goods," which "works no injustice" because (1) retailers "can apportion the costs of such protection in the course of their continuing business relationship," (2) "such strict liability leads to enhanced product safety since retailers are in a position to exert pressure on manufacturers," and (3) "the opportunity for an injured consumer to recover is increased")).

Under Rule 20(a)(2) of the FRCP, persons may be joined as defendants where (1) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and (2) "any question of law or fact common to all defendants will arise in the action." *See also* Remand Mot. at 7:10-14 (citing same). In this case, the Retail Defendants qualify as permissive defendants because (1) Plaintiff's relief against the Retail Defendants would be asserted against them jointly and severally arising out of the same transaction or occurrence (*i.e.*, Decedent's use of Baby Powder) and (2) any question of law or fact common to all defendants will arise in the case. However, just because the Retail Defendants qualify as permissive defendants does not mean the Court should permit them to be added to this lawsuit. Instead, the Court must evaluate both the viability of adding such defendants as well as Plaintiff's motive for doing so.

state court because the statute of limitations has likely run." Remand Mot. at 10:8-12. Plaintiff initially, admits that his wife died on April 1, 2019, and that the applicable California statute of limitations, CAL. CODE CIV. P. § 335.1, would mean that absent tolling, the statute of limitations ran on April 1, 2021, preventing him from filing a separate action against the Retail Defendants in state court. *Id.* at 10:12-18. In his reply, however, he argues that because California uses the delayed discovery rule, the statute of limitations would not run until he discovered or should have discovered the cause of the injury. Remand Reply at 10:23-26. He contends that neither he nor his wife knew at the time she died that Johnson & Johnson's Baby Powder caused her death, so the statute of limitations would likely extend beyond April 1, 2021. *Id.* at 10:26-28. Nevertheless, although Plaintiff never addresses when he discovered that Baby Powder likely caused her death, he also admits that "by the time this Court resolves this motion, the statute of limitations on a new suit will have almost certainly run." *Id.*

Although Plaintiff has pled three claims for relief, he only seeks to pursue the strict products liability claim against the Retail Defendants. *See* ECF No. 7-1. "California has a two-year statute of limitations for most tort claims alleging personal injury, including product liability claims." *Rustico v. Intuitive Surgical, Inc.*, 993 F.3d 1085, 1091 (9th Cir. 2021) (citing CAL. CODE CIV. P. § 335.1); *see also* CAL. CODE CIV. P. §§ 335.1 (requiring that "[a]n action for . . . injury to, or for the death of, an individual caused by the wrongful act or neglect of another" must be brought within two years); 377.20 (providing that "a cause of action for or against a person is not lost by reason of the person's death, but survives subject to the applicable limitations period"); 377.60(a) (providing that "[a] cause of action for the death of a person caused by the wrongful act or neglect of another may be asserted by . . . [t]he decedent's surviving spouse"). However, under California's statutorily-codified delayed discovery rule for toxic exposure cases, "an action for the wrongful death of any plaintiff's decedent, based upon exposure to a hazardous material or toxic substance" must be brought within the later of either two years from the date (1) "of the death of the plaintiff's decedent" or (2) "on which the plaintiff is aware of, or

-26-

1   reasonably should have become aware of, the physical cause of the death and sufficient
2   facts to put a reasonable person on inquiry notice that the death was caused or contributed
3   to by the wrongful act of another." CAL. CODE CIV. P. § 340.8(b); *see also Lopez v. Sony*
4   *Elecs., Inc.*, 5 Cal. 5th 627, 633 (2018) (noting that "[t]he Legislature declared that section
5   340.8 was intended to codify the delayed discovery rule for personal injury and wrongful
6   death cases involving toxic exposure").

7        Absent application of the delayed discovery rule, because Plaintiff alleges Decedent
8   died on April 1, 2019, the statute of limitations on her claims for products liability,
9   negligence, wrongful death, and/or a survival action was two years and ran on April 1,
10  2021. *See, e.g., Daoust v. ATG-Rehab Specialists, Inc.*, No. 2:13-CV-1997 GEB CKD,
11  2014 WL 197803, at *2 (E.D. Cal. Jan. 16, 2014), *report and recommendation*
12  *adopted,* No. 2:13-CV-1997 GEB CKD, 2014 WL 824253 (E.D. Cal. Mar. 3, 2014) (noting
13  that where the decedent died on May 26, 2012, but the amended complaint was filed on
14  December 12, 2021, the amended complaint was "well within the two year statute of
15  limitations for products liability, negligence, wrongful death and survival actions") (citing
16  CAL. CODE CIV. P. §§ 335.1, 377.20, 377.60); *see also* Remand Mot. at 10:12-18 (admitting
17  that his wife died on April 1, 2019, meaning that under section 335.1, the statute of
18  limitations ran on April 1, 2021). However, two issues could save Plaintiff's claim: (1) the
19  delayed discovery rule or (2) the relation back doctrine. As to the delayed discovery rule,
20  however, Plaintiff fails to advise—in the complaint, FAC, or briefing—when he or his wife
21  discovered Defendant's Baby Powder may have caused her death. Thus, the Court is
22  unable to determine when the statute of limitations ran under the delayed discovery rule.
23  However, Plaintiff concedes that it will likely have run by the time the Court rules on his
24  motion, *see* Remand Reply at 10:26-28, suggesting the discovery must have been within
25  three months of her death given the Court's ruling is within three months of the original
26  date the statute of limitations ran (*i.e.*, April 1, 2021), and even under the delayed discovery
27  rule, Plaintiff's claim is barred.

28        As to whether the relation back doctrine applies, the issue is more complex. For

-27-

statute of limitations purposes, the FRCP provide that "[a]n amendment to a pleading relates back to the date of the original pleading when" either (1) "the law that provides the applicable statute of limitations allows relation back," (2) "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading," or (3) "the amendment changes the party or the naming of the party against whom a claim is asserted," provided that (a) such an amendment relates to the same events set out in the original pleading and (b) the party being brought in by the amendment receives notice of the lawsuit within ninety days of the complaint being filed. FED. R. CIV. P. 15(c)(1).  Thus, under FRCP 15(c), this Court looks to "the law that provides the applicable statute of limitations" to determine whether it permits relation back.  California law provides the applicable statute of limitations here.

Under California law, amendments of pleadings are governed by two provisions, depending on whether the plaintiff seeks to add the new defendant as a new party, CAL. CIV. PROC. CODE § 473(a)(1) ("Section 473(a)(1)"), or substitute the new defendant in as a party named in the complaint but whose name the plaintiff did not know at the time of filing the complaint, CAL. CIV. PROC. CODE § 474. *See also Butler v. Nat'l Cmty. Renaissance of California*, 766 F.3d 1191, 1201 (9th Cir. 2014) (citing *Bd. of Trs. of Leland Stanford Jr. Univ. v. Superior Ct.*, 149 Cal. App. 4th 1154 (2007)) (providing that "[a]mendments of pleadings under California law are generally governed by California Civil Procedure Code § 473(a)(1)").  "Section 473(a)(1) does not contain any express provision for relation back of amendments, and California courts have held that it 'does not authorize the addition of a party for the first time whom the plaintiff failed to name in the first instance.'" *Butler*, 766 F.3d at 1202 (citing *Kerr-McGee Chem. Corp. v. Super. Ct.*, 160 Cal. App. 3d 594 (1984)).  Accordingly, under Section 473(a)(1), Plaintiff's Proposed FAC would not relate back to the date of filing of the original complaint.

"Under California Civil Procedure Code § 474, however, California courts have recognized that 'where an amendment does not add a 'new' defendant, but simply corrects a misnomer by which an 'old' defendant was sued, case law recognizes an exception to the

-28-

1   general rule of no relation back." *Butler*, 766 F.3d at 1202 (citing *Hawkins v. Pac. Coast*
2   *Bldg. Prods., Inc.,* 124 Cal. App. 4th 1497 (2004)). "For § 474 to apply, however, the
3   plaintiff must be 'genuinely ignorant' of the defendant's identity at the time the original
4   complaint is filed." *Butler*, 766 F.3d at 1202 (citing *Woo v. Super. Ct.*, 75 Cal. App. 4th
5   169, 177 (1999)). Thus, "[w]hen the plaintiff is ignorant of the name of a defendant, he
6   must state that fact in the complaint, . . . and such defendant may be designated in any
7   pleading or proceeding by any name, and when his true name is discovered, the pleading
8   or proceeding must be amended accordingly." CAL. CIV. PROC. CODE § 474. "When a
9   defendant is brought in by amendment substituting his name for a Doe defendant, he 'is
10  considered a party to the action from its commencement for purposes of the statute of
11  limitations.'" *Lindley v. Gen. Elec. Co.*, 780 F.2d 797, 799 (9th Cir. 1986) (quoting
12  *Barrows v. American Motors Corp.,* 144 Cal. App. 3d 1, 7 (1983)). Further, "[u]nlike
13  [FRCP] 15(c), section 474 has no requirement that the newly named defendant have notice
14  of the institution of the action within the time provided for commencement of the action
15  [*i.e.*, ninety days]." *Id.*

16          Defendant argues that "Plaintiff cannot rely on the relation-back doctrine as he seeks
17  to add new defendants and retain Does 1-100." Remand Oppo. at 13:4-6. Defendant points
18  out that because "Plaintiff explicitly states that he is **adding** Food 4 Less and Vons as 'two
19  new defendants' to the lawsuit," the "amendment will not relate back to the filing of the
20  Original Complaint because Plaintiff's attempt to bring in new defendants after the statute
21  of limitations has expired does not comply with California law." *Id.* at 13:21-25 (citing
22  Remand Mot. at 3:21-23; Stay Oppo. at 2:26). Defendant further argues that "if the Court
23  allowed Plaintiff to cure this procedural defect by substituting the new Retail Defendants
24  for Doe defendants named in the Original Complaint, California law will still preclude
25  relation-back because Plaintiff cannot claim ignorance of these retailers' names at the time
26  of the filing of the Original Complaint." *Id.* at 13:26-14:4. For example, "Plaintiff alleges
27  that he was married to the decedent for some 14 years prior to her death." *Id.* at 3:19-20,
28  14:9-10 (citing Compl. at 2:3). Defendant suggests that after fourteen (14) years of

marriage, Plaintiff likely knew where his wife purchased her Baby Powder, and as a result, "there is no justifiable reason why the Retail Defendants were not named in the Original Complaint." Remand Oppo. at 14:8-9. Instead, Plaintiff filed a Motion to Amend the Complaint almost two years after his wife's death and three weeks after removal. *Id.* at 14:10-12. Defendant adds that "[i]f Plaintiff did not know the name of the retailers where Decedent purchased the products at the time of her death in 2019, it is unlikely that Plaintiff discovered this information in one month after the initial filing." *Id.* at 14:12-15. As a result, Defendant asserts that "there is no good faith argument to be made that he was ignorant of the identity of the retail defendants." *Id.* at 3:20-21 (citing CAL. CIV. PROC. CODE § 474). Moreover, if Plaintiff cannot add the Retail Defendants as doe defendants, allowing Plaintiff's claims against them to relate back to the original pleading, then, Plaintiff's claims against the Retail Defendants are time-barred. *Id.* at 3:21-23 (citing CAL. CIV. PROC. CODE § 377.60).

In *Anderson v. Allstate Ins. Co.*, the Ninth Circuit concluded that the district court did not err in finding that the plaintiff's amended complaint seeking to add new defendants was barred by the statute of limitations as to the new defendants because the plaintiff added them as new defendants rather than "John Doe" defendants. 630 F.2d 677, 682-83 (9th Cir. 1980). The *Anderson* plaintiffs failed to allege any reason that one of the new defendants could not have been named as a defendant in the initial complaint. *Id.* at 682. The court held that the district court correctly concluded that the plaintiffs added the new defendants as new defendants rather than as fictitious defendants previously named, relying on the fact that the amended complaint "added their names to the list of previously-named individual and corporate defendants and retained the listing of defendants Does 1 to 50." *Id.* at 683.

On the one hand, when a plaintiff files suit in state court, and the defendant removes that lawsuit to federal court, a finding by the district court that the statute of limitations would bar a new separate action against a defendant the plaintiff seeks to add "*may* warrant remand." *See Murphy*, 74 F. Supp. 3d at 1284. On the other hand, the Ninth Circuit has

3:21-cv-00873-BEN-DEB

repeatedly affirmed the district court's denial of leave to amend because "[f]urther amendment would simply be a futile exercise." *Parents for Privacy v. Barr*, 949 F.3d 1210, 1239 (9th Cir. 2020). Here, even if the Court allowed Plaintiff to add the new Retail Defendants, Plaintiff's claims would not be permitted under Section 473(a)(1) or Section 474, and therefore, are futile. *See id.* Like the *Anderson* plaintiffs, Plaintiff in this case filed an original complaint naming Does 1 through 100, *see* Compl. at 6, and his proposed FAC names Does 1 through 100 as well while adding the Retail Defendants to the caption, *see* ECF No. 7-1 at 2. Thus, this Court, like the *Anderson* court, rejects any argument that Plaintiff intended to add the Retail Defendant as doe defendants.[6] Even if the Court permitted Plaintiff to amend the operative complaint in federal court to add the Retail Defendants, the claims against those defendants would still be barred by the statute of limitations. *See Anderson*, 630 F.2d at 683. As such, permitting amendment would prove to be an exercise in futility.

In sum, this Court finds this factor at best weighing neutrally given Plaintiff is likely barred from pursuing his claim against the Retail Defendants in state court, but his failure to provide the Court with enough facts—such as when he discovered Johnson & Johnson may have caused his wife's death—prevents the Court from conclusively determining this factor.

### 3.    *Unexplained Delay*

Courts also examine whether the plaintiff delayed without explanation when seeking to remand. *McGrath*, 298 F.R.D. at 608-09. Plaintiff argues that his request to amend the complaint is timely and weighs in favor of remand. Remand Mot. at 10:19-28. Defendant opposes by pointing out that Plaintiff never sought to remand until nineteen days after

---

[6] The Court relied on this information in determining whether the plaintiffs truly intended to add the Retail Defendants as new defendants or doe defendants. *See Anderson*, 630 F.2d at 682-83. The Ninth Circuit, however, did not comment on the propriety of using doe defendants in federal court, which is the subject of another portion of this order. As such, *Anderson* does not conflict with the Court's ruling at the conclusion of this order that Plaintiff's use of doe amendments in the proposed FAC is improper.

-31-

Defendant removed the case, following the JPML's conditional transfer order and Defendant's Motion to Stay. *See* Remand Oppo. at 11:22-12:2. Plaintiff replies by arguing this factor weighs in favor of joinder because he sought to amend "a mere 56 days after he filed his original complaint and 19 days after the case was removed." Remand Reply at 10:7-11:19. Plaintiff also points out that no dispositive motions have been filed, and discovery requests not been served. *Id.* at 10:11-12.

Here, Plaintiff filed suit on March 30, 2021. *See* ECF No. 1-2 at 6. As discussed above, absent application of the delayed discovery rule, on April 1, 2021, the statute of limitations ran on Plaintiff's wrongful death claims. Remand Oppo. at 6:15-16. This means Plaintiff filed suit on the eve of the expiration of the statute of limitations. As Defendant points out, "Defendant and Plaintiff were married for 14 years" and filed the complaint more than two years after Decedent died. Remand Oppo. at 14:9-11. "If Plaintiff did not know the name of the retailers where Decedent purchased the products at the time of her death in 2019, it is unlikely that plaintiff discovered this information in one month after the initial filing," *id.* at 14:12-15, casting doubt on the legitimacy of Plaintiff's proposed amendment. This Court finds the timing of Plaintiff's Motion to Remand—*i.e.*, twelve (12) days *after* Defendant's May 13, 2021 Motion to Stay after providing notice to the JPML and eleven (11) days after the JPML's May 14, 2021 conditional transfer order—inherently suspect. Thus, the Court finds this factor weighs neutrally as well given Plaintiff did not "inexplicably delay," but the timing of the Motion is suspicious.

### 4. *Intent of Joinder*

"[T]he Ninth Circuit has recognized that a plaintiff's motives are relevant to the question of whether district courts should allow amendment to a complaint to add a party even under the liberal amendment policy set forth in Rules 15 and 20." *McGrath*, 298 F.R.D. at 607 (citing *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980) ("[W]e conclude that a trial court should look with particular care at [plaintiff's] motive in removal cases, when the presence of a new defendant will defeat the court's diversity jurisdiction and will require a remand to the state court.")); *see also Clinco*, 41 F.

Supp. 2d at 1083. "Therefore, 'a trial court should look with particular care at such motive in removal cases.'" *Clinco*, 41 F. Supp. 2d at 1083 (quoting *Desert Empire*, 623 F.2d at 1376).

Plaintiff argues that the cases suggesting a plaintiff's motive in seeking to join a new non-diverse defendant pre-date Congress' enactment of Section 1447(e), the legislative history of which suggests it was intended to "undermine the doctrine employed by some courts that amendments which destroyed diversity were to be viewed with suspicion." Remand Mot. at 11:1-12; Remand Reply at 11:9-16 (quoting *Dordoni*, 2020 WL 6082132 at *11). Plaintiff contends that to the extent his motive "still maters," he "is not seeking to add defendants 'solely' to defeat jurisdiction" or add a sham defendant. Remand Mot. at 11:13-16. Rather, he seeks to add "two retailer defendants (only one of which is an in-state defendant) who sold his wife the Baby Powder that killed her," and as a result, this factor "either favors joinder or it is, at worst, neutral." *Id.* at 11:16-21. Defendant responds that Plaintiff's underlying motive in seeking the amendment is to defeat diversity jurisdiction, and therefore, the Court should deny Plaintiffs' Motion. 11:7-12:10. Plaintiff replies by stating "Congress recognized there's nothing inherently wrong about a plaintiff adding a defendant to defeat diversity jurisdiction, especially when (as in cases like this one) the plaintiff could have added the defendant to the original complaint." Remand Reply at 11:17-20.

The Court rejects Plaintiff's argument that courts no longer skeptically view attempts by plaintiffs to add diversity-destroying defendants for several reasons: First, the Ninth Circuit announced its opinion in *Desert Empire*, which held that courts should "look with particular care" at a plaintiff's motive in adding a non-diverse defendant post-removal when doing so would require remand, in 1980. *See* 623 F.2d at 1375. Although the Act to Amend Title 28, United States Code, which added subsection (e) to Section 1447, was enacted in 1988, *see* Pub. L. 100-702 (H.R. 4807), *An Act to Amend Title 28, United States Code*, 100th Cong. 2d Session (1988), the legislative history does not indicate any intent that courts should not investigate the intent of a plaintiff seeking to add a non-diverse

defendant, *see* H.R. REP. 100-889, *Judicial Improvements and Access to Justice Act: House Report (Judicial Committee)*, 100th Cong. 100-889, 72-73 (1988).[7]  Second, even the cases that Plaintiff cites for his argument that intent is not relevant do not stand for that proposition.  *Compare* Remand Reply at 11:13-17 (citing *Dordoni*, 2020 WL 6082132 at *11 (quoting *IBC*, 125 F. Supp. 2d at 1013 for the proposition that Congress enacted Section 1447(e) with the intent of undermining the doctrine employed by courts that amendments that would destroy diversity should be treated with skepticism) *with Dordoni*,

---

[7]  Although Plaintiff relies on the legislative history for this argument, he conveniently fails to cite which report or hearing session supports his argument.  One of the cases cited on by Plaintiff for his proposition, however, *IBC*, 125 F. Supp. 2d at 1013, cites to H.R. REP. 889, 100th Cong, 2d Sess. 72, reprinted in 1988 U.S.C.C.A.N. 6033.  The Court's examination of this House Report does not reveal an intent to make motive in adding a defendant irrelevant:

> Proposed section 1447(e) is new.  It takes advantage of the opportunity opened by removal from a state court to permit remand if a plaintiff seeks to join a diversity-destroying defendant after removal.  Joinder coupled with remand may be more attractive than either dismissal under civil rule 19(b) or denial of joinder. . . .
>
> It would be possible to draft a broader amendment.  The most obvious alternative would be to provide that 'the court may deny joinder, dismiss the action, or permit joinder and either remand to the state court or retain jurisdiction.'  This approach would rely on the concept of pendent party jurisdiction, and justify departure from the traditional requirement of complete diversity by the advantage of permitting the most desirable joinder of parties without sacrificing the advantage of continuing proceedings that may be well under way in the Federal court.  The more modest approach was chosen instead in order to avoid the opposition that might be encountered by a proposal that would provide a small enlargement of diversity jurisdiction.

H.R. REP. 100-889, 72-73, 1988 U.S.C.C.A.N. 5982, 6033-34.  Thus, the legislative history, although making clear that a court may not allow the addition of a non-diverse party without remanding to the state court, indicates the Court retains the discretion to either deny joinder or dismiss the case.  *See id.*  It also never suggests that the intent of the plaintiff in seeking to add the defendant is irrelevant.  *Id.*

-34-

2020 WL 6082132 at \*4 (noting that although "suspicion of amendment for the purposes of destroying diversity is not an important factor," "[t]he motive of a plaintiff in seeking the joinder of an additional defendant is [still] relevant to a trial court's decision to grant the plaintiff leave to amend his original complaint"); *IBC*, 125 F. Supp. 2d at 1012 ("Suspicion of diversity destroying amendments is not as important now that § 1447(e) gives courts more flexibility in dealing with the addition of such defendants."). Thus, while motive may not be a determinative factor, it remains relevant, contrary to Plaintiff's contention. Third, when the text of a statute is clear, as it is in this case, a court need look no further as "[t]he people are entitled to rely on the law as written without fearing that courts might disregard its plain terms based on some extratextual consideration." *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1749 (2020). Here, the Court does not find the text of Section 1447(e) unclear so as to even warrant review of the legislative history given the role of the judiciary remains to interpret the laws enacted by the legislative branch as written, rather than to venture into the lawmaking arena by attempting to decipher the legislature's intent when enacting the law. *Compare* U.S. Const., Art. I, § 1 (granting "[a]ll legislative powers" to Congress) *with Marbury v. Madison*, 5 U.S. 137, 177 (1803) (holding that "[i]t is emphatically the province and duty of the judicial department to say what the law is" by interpreting the laws, including the Constitution).

Defendant advances three arguments it alleges support a finding that Plaintiff's intent in amending is to destroy diversity, and therefore, this factor should weigh against joinder: First, "Plaintiff's counsel did not name the Retail Defendants until after [Defendant] removed this case to federal court" without offering "an explanation for not including the retailers in the Original Complaint." Remand Oppo. at 11:2-27 (citing *Bakshi v. Bayer Healthcare, LLC*, No. C07-00881 CW, 2007 WL 1232049, at \*5 (N.D. Cal. Apr. 26, 2007) (denying leave to amend because plaintiff did not explain the delay in adding prospective defendant)). Second, "Plaintiff was aware of the removal because he filed the Motion to Amend and Remand nineteen days after JJCI removed the case to federal court," and "[i]n fact, . . . did not file the motion until after the JPML issued a conditional transfer

-35-

order to transfer the case to the Talc MDL." *Id.* at 11:27-12:2. Third, "Plaintiff's draft amended complaint is nearly identical to the Original Complaint with the exception of the addition of the Retail Defendants and some associated editorial edits." 12:2-9 (citing *Aqua*, 2012 WL 1535769, at *3 (finding improper motive where plaintiff filed an amended complaint that was substantially similar to the original complaint with the exception of minor edits and the addition of the new defendants); *see also Clinco*, 41 F. Supp. 2d at 1083 (questioning motive when plaintiff filed an amended complaint that was substantially similar to the original complaint)).

In *Clinco*, the court reasoned that because the plaintiff's original and amended complaints were substantially similar, and the plaintiff knew of the removal at the time the plaintiff filed the amended complaint, the court "could justifiably suspect that Clinco's amendment of the complaint was caused by the removal rather than an evolution of his case." 41 F. Supp. 2d 1080, 1083. Courts will also infer "an improper motive where the plaintiff's proposed amended complaint contains only minor or insignificant changes to the original complaint." *Keledjian v. Jabil Cir., Inc.*, No. 17CV0332-MMA (JLB), 2017 WL 3437652, at *6 (S.D. Cal. Aug. 10, 2017) (noting that "the FAC is substantially similar to the original complaint" as it "alleges the same claims against Defendant . . . and includes essentially identical factual allegations," but the plaintiff merely added "a claim for NIED against a new defendant," indicating that the plaintiff was attempting manipulate the forum and weighing "heavily against permitting joinder") (citing *San Jose Neurospine v. Cigna Health & Life Ins. Co.*, No. 16-CV-05061-LHK, 2016 WL 7242139, at *10 (N.D. Cal. Dec. 15, 2016) (quoting *Forward-Rossi v. Jaguar Land Rover N. Am., LLC*, No. 2:16-CV-00949-CAS-KSX, 2016 WL 3396925, at *4 (C.D. Cal. June 13, 2016))).

As in *Clinco*, Plaintiff knew at the time he sought to amend the complaint of the removal of this case, and he seeks to file an amended complaint that he himself admits is almost identical to the original complaint with the exception of adding a non-diverse defendant. Remand Mot. at 5:26-28. Thus, the Court finds this factor weighs against joinder.

-36-

### 5. *Validity of the Claims*

Courts must also examine whether a proposed new claim sought to be added has merit. *Clinco*, 41 F. Supp. 2d at 1083; *IBC*, 125 F. Supp. 2d at 1012-13. Plaintiff argues that his claims against the Retail Defendants both "seem valid" under California law," which permits consumers to sue the retailers who sell defective products causing injury to consumers. Remand Mot. at 12:3-7. Thus, Plaintiff argues this factor also favors joinder. *Id.* at 11:7-8 (citing *Dordoni*, 2020 WL 6082132 at *12). Defendant responds that because Plaintiff admits his claims against the Retail Defendants are likely time-barred, "there are no valid claims against these proposed new defendants." Remand Oppo. at 12:28-13:4 (citing Remand Mot. at 7:16-18).

The district court would need to apply California law to relation back, and "[u]nder California law, if a defendant is added to an amended complaint as a new defendant, and not as a Doe defendant, the amendment does not relate back to the time of the original complaint." *Anderson v. Allstate Ins. Co.*, 630 F.2d 677, 682-83 (9th Cir. 1980). Without relation back, and absent enough information to show the delayed discovery rule saves the day, the Court has already established that Plaintiff's claims against the Retail Defendants are time-barred. Even if Plaintiff came forward with a viable argument to the contrary, the Court finds that the claims are also unlikely to be found viable based on the allegations contained in the Proposed FAC. Plaintiff's original complaint, which only named Johnson & Johnson, alleged three causes of action for (1) strict products liability, (2) negligence, and (3) fraud. *See* ECF No. 1-2 at 6. Plaintiff's proposed FAC alleges the same three claims for relief[8]; however, all of which are brought against Johnson & Johnson, but only

---

[8]     Plaintiff's Proposed FAC uses the term "cause of action." While California superior courts, which utilize the code pleading standard, use the term "cause of action," federal courts, which operate under the notice pleading standard, refer to what would otherwise be known in the superior courts as "causes of action" as "claims for relief." *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *see also* FED. R. CIV. P. 8. Thus, because district courts analyze motions to dismiss under whether the plaintiff has pled a viable "claim for relief" (rather than "cause of action") and no longer use the label "cause of action," the Court refers to Plaintiff's "causes of action" as "claims for relief." *See, e.g., In re Ohio Execution Protocol*

3:21-cv-00873-BEN-DEB

the First Claim for Relief for strict products liability adds the Retail Defendants as well. *See* Proposed FAC, ECF No. 7-1 at 8-10, 12. Plaintiff's strict products liability claims allege three theories: (1) defective design, (2) failure-to-warn, and (3) manufacturing defects. *See* Proposed FAC, ECF No. 7-1 at 8-9. However, Plaintiff's Proposed FAC also alleges that "Johnson & Johnson is liable for its negligent design, manufacture, marking, supply, testing, packaging, and labeling of asbestos-containing products, including Baby Powder." Proposed FAC, ECF No. 7-1 at 10, ¶ 57. Meanwhile, the Proposed FAC alleges that both Food 4 Less and Vons are "a retailer of products, including selling Johnson and Johnson's Baby Powder during the relevant time period" and "engaged in the business of distributing goods to the public." Proposed FAC, ECF No. 7-1 at 3-4, ¶¶ 6-7. In other words, Plaintiff includes no allegations that would plausibly allow the Court to conclude Food 4 Less and Vons had any involvement in the design and/or manufacturing of Johnson & Johnson's Baby Powder that would allow them to be held liable for any manufacturing or design defects with the product. *Compare* Remand Reply at 9:5-7 ("The retailer defendants are liable under a products-liability theory because they sold Johnson & Johnson's product that killed Ms. Valdez.") *with Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Thus, the only plausible theory of liability against the Retail Defendants would be a failure-to-warn theory.

The doctrine of strict products liability initially applied only to manufacturers and arose out of a judicial concern that "the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market, rather than by the injured persons who are powerless to protect themselves." *Greenman v. Yuba Power*

*Litig.*, 2017 U.S. Dist. LEXIS 107468, at *27, fn. 2 (S.D. Ohio July 12, 2017, No. 2:11-cv-1016) (noting that "[p]leading claims as 'causes of action' was replaced in 1938 by 'claims for relief'" in 1938 under Rule 8(a) of the FRCP even though "many plaintiffs' counsel continue to use the phrase 'cause of action'").

*Products, Inc.*, 59 Cal. 2d 57, 63 (1963). Later, the California Supreme Court extended strict liability to retailers as they, like manufacturers, "are engaged in the business of distributing goods to the public." *Vandermark v. Ford Motor Co.*, 61 Cal. 2d 256, 262 (1964) (In Bank); *see also Bolger v. Amazon.com, LLC*, 53 Cal. App. 5th 431, 462 (2020), *review denied* (Nov. 18, 2020) (holding that the trial court erred by summarily adjudicating that Amazon could not be held strictly liable for defects in third-party products sold through its website as to the plaintiff's cause of action for strict products liability against Amazon). However, "[i]n general, a product seller will [only] be *strictly liable* for failure to warn if the warning was feasible and the absence of a warning caused the plaintiff's injury." *Webb v. Special Elec. Co.*, 63 Cal. 4th 167, 181 (2016). "California courts have been able to prevent the expansion of manufacturer liability for economic injuries suffered by a retail buyer *at large*, while at the same time allowing a particular party of whom the manufacturer had *specific knowledge* to go forward with a negligence action." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1054 (N.D. Cal. 2004).

Defendant argues that "[n]othing in Plaintiff's moving papers suggest that there is a viable claim against these Retail Defendants" or addresses why Plaintiff failed to file suit against them originally. Remand Oppo. at 5:21-23. Rather, Defendant contends that "[t]he truth of the matter is that Plaintiff is simply trying to add these Retail Defendants to remand this matter." *Id.* at 5:23-24. The Court finds that this argument goes more towards the issue of intent for joinder and prejudice. That being said, as to viability of the claims, the Court finds that *assuming arguendo* that Plaintiff's claims were not time-barred, the claims are likely viable enough to pass the pleading stage (as to the failure to warn theory only). However, that inquiry is not relevant today, and because the Court finds the claims are time-barred, this factor is at best, neutral, or at worst, against joinder.

### 6.  *Prejudice*

Finally, Plaintiff argues he will suffer prejudice if the Court denies his request to amend the complaint because that would require him "to 'abandon a viable claim' against the Retailer Defendants because of statute-of-limitations issues." Remand Mot. at 12:9-

3:21-cv-00873-BEN-DEB

16.   Alternatively, even if the claims are not time-barred, he would need to pursue two similar lawsuits in two different forums, which would prejudice him by requiring him to expend more resources to prosecute two cases instead of one. *Id.* at 12:16-20. Thus, he argues this factor favors joinder. *Id.* at 12:20-21. Defendant responds that Plaintiff will not be prejudiced if the Court refuses to allow him to amend the complaint because (1) "Plaintiff has no independent claim against the Retail Defendants," and having already named Johnson & Johnson, "Plaintiff cannot make a valid argument that without the retailers, Plaintiff could not fully recover against Johnson & Johnson," and (2) Plaintiff's proposed claims are already time-barred, so even if the Court remanded the case, Plaintiff would still be unable to add the Retail Defendants, meaning "no right of relief is being limited." *Id.* 5:2-4, 12:16-22, 12:1-25. Defendant points out that given "many of the thousands of cases now pending in the MDL and across the country have not named a retail defendant," Plaintiff cannot show prejudice, resulting in this factor weighing against joinder. *Id.* at 5:28-6:1.

Courts must balance examining whether refusal to permit amendment allowing non-diverse defendants will prejudice the plaintiff with their "responsibility to scrutinize the purpose behind Plaintiff's attempt to join non-diverse Defendants in a diversity jurisdiction case." *McGrath*, 298 F.R.D. at 609 (citing *Desert Empire*, 623 F.2d at 1375). For example, where one defendant remains in the case as a source of payment for damages, other courts have found the absence of prejudice. *Boon*, 229 F. Supp. 2d at 1025. However, where an original defendant remains in the case as a viable source for payment of a plaintiff's damages, other courts have found that the prejudice factor weighs against amending the complaint to add a non-diverse defendant. *See, e.g.*, *San Jose Neurospine v. Cigna Health & Life Ins. Co.*, No. 16-CV-05061-LHK, 2016 WL 7242139, at *12 (N.D. Cal. Dec. 15, 2016) (concluding that where the proposed new defendant was not "involved in the events giving rise to Plaintiff's causes of action," and the original defendant remained "a potential source for payment of damages," the prejudice factor weighed against amendment). The Court agrees that given Plaintiff has not made any argument that Johnson & Johnson may,

3:21-cv-00873-BEN-DEB

for some reason, be unable to pay Plaintiff's damages, such as insolvency, and the claims against the Retail Defendants are likely time-barred anyways. Thus, this factor weighs against joinder.

### 7. *__Summary of Factors__*

The Court finds that not a single factor weighs strongly in favor of Plaintiff joining the Retail Defendants. Instead, factors one, four, and six weigh against joinder, while factors two, three, and five are, at best, neutral. More importantly, it appears amending the complaint would prove to be an exercise in futility. *See Parents for Privacy*, 949 F.3d at 1239. As a result, the Court **DENIES** Plaintiff's Motion for Leave to Amend the Complaint to Add the Retail Defendants.

### D. __Motion to Stay__

Defendant argues that the Court should stay this case because in the absence of a stay, (1) "this Court would waste time supervising pretrial proceedings and making rulings in a case that will likely soon be transferred to an MDL proceeding" and (2) "Defendant would be significantly and unfairly prejudiced because it would be required to engage in duplicative discovery and motions practice in jurisdictions around the country." *Id.* at 2:10-13. Defendant contends that a stay is warranted because (1) "dozens of similar cases have been stayed by courts around the country pending the transfer of talc-related actions to the MDL court," *id.* at 2:13-18, and (2) "a stay is appropriate because it would promote coordination of the talcum powder product cases and eliminate the potential for conflicting pretrial rulings," *id.* at 3:16-4:2 (citing cases). In his opposition brief, Plaintiff admits that "in the typical case, a stay often makes sense" when a MDL transfer is pending because "[i]t prevents courts from issuing orders that might conflict with later pretrial rulings from the MDL court." Stay Oppo. at 4:5-9 (citing *Rivers*, 980 F. Supp. at 1360-61). However, Plaintiff argues that his case differs because "[t]here is a pending motion to remand to state court that challenges whether this Court has jurisdiction over this case." *Id.* at 4:10-12. Plaintiff argues that "[i]n that situation, the original federal court typically resolves the motion to remand first before addressing the motion for a stay." *Id.* at 4:12-24 (citing

-41-

1  cases).  Defendant replies that (1) courts routinely issue stays even where a motion to
2  remand is pending; (2) Plaintiff's Motion to Amend and Remand is meritless because
3  permissive amendment is inappropriate as the Retail Defendants are not necessary parties,
4  and the motion to amend represents nothing more than a sham amendment intended to
5  destroy diversity; (3) judicial economy favors granting a stay; (4) Defendant will be
6  prejudiced in the absence of a stay; and (5) Plaintiff's Motion to Remand does not prevent
7  a transfer of this case.  Stay Reply at 2:18-20, 4:4, 4:25, 5:18.

8         In *Good v. Prudential Ins. Co. of Am.*, the plaintiff moved to remand the case to
9  state court while the defendant moved to stay proceedings pending a final decision by the
10 JPML on whether to transfer the case.  5 F. Supp. 2d at 805.  First, in considering the
11 plaintiff's motion to remand, the Court found that the plaintiff had fraudulently joined the
12 non-diverse defendant, and as result, removal was proper, and the plaintiff's motion to
13 remand should be denied.  *Id.* at 807-08.  Second, the court, noting that the JPML had
14 issued a conditional transfer order, held that a stay pending the JPML's final decision was
15 not only proper but would also further the aim of judicial efficiency.  *Id.* at 809.  In doing
16 so, the court rejected the plaintiff's argument that he would be prejudiced due to the fact
17 that he had a pending motion before the Court given the Court found this argument moot
18 in light of its concurrent denial of his motion to remand.  *Id.*

19        This Court finds this case resembles the *Good* case, and in that vein, judicial
20 efficiency required this Court to address Plaintiff's Motion to Remand, which it has done,
21 and afterwards, stay this case until the JPML makes a final decision on the conditional
22 transfer order.  Thus, the Defendant's Motion to Stay the Case is **GRANTED**.

23     **E.    Doe Defendants**

24        Plaintiff's operative complaint names DOES 1 through 100.  Courts throughout the
25 Ninth Circuit have repeatedly held that federal courts do not permit the use of doe
26 defendants.  *See, e.g., Molnar v. Nat'l Broad. Co.*, 231 F.2d 684, 687-88 (9th Cir. 1956)
27 (noting that the "attempt to join fictitious defendants is said to be justified in California
28 practice," but "no one of the Rules of Civil Procedure under which federal courts operate

-42-

3:21-cv-00873-BEN-DEB

gives warrant for the use of such a device"); *accord Tolefree v. Ritz*, 382 F.2d 566, 567 (9th Cir. 1967) (holding that the case "was also properly dismissed as to the fictitious defendants," and "[i]f plaintiff later ascertains the names of additional persons he wishes to join as defendants, the Federal Rules of Civil Procedure provide a way of doing so"); *Craig v. United States*, 413 F.2d 854, 856 (9th Cir. 1969) (pointing out that "[t]he only purpose the naming of fictitious defendants could possibly serve is to make it possible to substitute named defendants after the statute of limitations has run," but FRCP 15(c) "provides the only way in which defendants, not accurately named in a pleading before the limitation period has run, may be accurately named afterwards" and "makes no mention of the pleading of fictitious parties"); *Lubin v. Sybedon Corp.*, 688 F. Supp. 1425, 1456–57 (S.D. Cal. 1988) (Enright, J.) (striking the doe defendants from the case after noting that "[t]he Ninth Circuit has repeatedly held that a suit naming Doe defendants may not be maintained in federal court."); *Indian Hills Holdings, LLC v. Frye*, No. 3:20-cv-00461-BEN-AHG, 2021 WL 1139419, at *9 (S.D. Cal. Mar. 25, 2021) (Benitez, J.) (noting that "[u]nlike California code pleading," the FRCP "neither authorize nor prohibit the use of fictitious parties; however, FRCP 10 does require a plaintiff to include the names of all parties in his complaint.").

Because the weight of authority indicates that the FRCP do not permit doe defendants, even in cases arising out of diversity jurisdiction, the Court dismisses Does 1 through 100 *with prejudice* because there are no allegations alleging their specific individual potentially liability. Further, even if the Court allowed the doe defendants to remain in the case, Plaintiff would still be required to seek leave of the Court to substitute in their true names by filing a motion for leave to amend pursuant to Rule 15 of the FRCP, as Plaintiff has done with the Retail Defendants. Upon doing so, the Court will further evaluate whether that defendant's joinder is appropriate in this case under the provisions of FRCP 19 and 21. Thus, all doe defendants are dismissed *with prejudice*.

## V.   **CONCLUSION**

For the above reasons, the Court **ORDERS** as follows:

-43-

3:21-cv-00873-BEN-DEB

1.     Plaintiff's *Ex Parte* Application for an Order Consolidating Hearing Dates is **DENIED AS MOOT**.

2.     Plaintiff's Motion to Remand is **DENIED**.

3.     Plaintiff's Motion to Amend the Complaint is **DENIED**.

4.     Defendant's Motion to Stay is **GRANTED** until the JPML rules on the transfer of this case into the MDL.  Defendant is ordered to provide this Court with a status report within five (5) calendar days of such a ruling.  If the JPML consolidates this case, (1) the stay will remain in effect unless and until the JPML transfers this case back to this Court for trial and (2) Defendant is to provide status reports to this Court every ninety (90) days while the stay is in place.

5.     The Clerk of the Court is instructed to dismiss all doe defendants *with prejudice*.

**IT IS SO ORDERED.**

DATED:    July 28, 2021

_____
**HON. ROGER T. BENITEZ**
United States District Judge

-44-

3:21-cv-00873-BEN-DEB